NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 19-246-MCA-AME |
| v. | **OPINION and ORDER** |
| CREAGHAN HARRY, | |
| Defendant. | |

**ANDRÉ M. ESPINOSA, U.S.M.J.**

This matter is before the Court on Defendant Creaghan Harry's May 13, 2021 letter application seeking release on bail conditions previously set by the Court, in light of the availability of certain property Defendant maintains suffices to satisfy those conditions. (ECF No. 172). The United States of America (the "Government") opposes Defendant's request for release. (ECF No. 173). The current application, which stems from Defendant's earlier motion to modify the conditions of his release, (ECF No. 134), and the Court's related Order of September 21, 2020, (ECF No. 144), was referred to this Court by the Honorable Madeline Cox Arleo, United States District Judge. On June 4, 2021, this Court held argument, via video conference, on Defendant's application and thereafter accepted additional supplemental briefing. (ECF Nos. 180, 181, 184, 185).

The Court has carefully considered the parties' written submissions, the arguments presented during the June 4, 2021 hearing, and the record concerning Defendant's prior efforts to secure his release. For the reasons that follow, Defendant's application for release is denied.

1

**I.     BACKGROUND**

In sum, Defendant maintains he has now satisfied the conditions of release set in Judge Arleo's April 22, 2020 Order and accompanying Opinion, as modified by the September 21, 2020 Order of the Honorable Joseph A. Dickson, United States Magistrate Judge.[1] The Court relies on and incorporates those decisions by reference, including the applicable legal standards as appropriate. Moreover, as the parties are familiar with the background of Defendant's effort to secure release, the Court will not repeat the procedural history in full but rather highlight the portions of the record pertinent to this application. For context, regarding the nature of this action, it suffices to state that the Indictment alleges that Defendant is the mastermind of an elaborate, international Medicare fraud, kickback and money laundering scheme involving more than $200 million in Medicare payments. (ECF No. 1). Defendant, who is 51 years old and faces a potential term of imprisonment in excess of 40 years, denies the charges and has entered a plea of not guilty.

In the April 22, 2020 Opinion, Judge Arleo ruled, in pertinent part:

> After a careful balancing of the factors in 18 U.S.C. § 3142(g), the Court finds that risk of flight can be significantly mitigated through a stringent set of conditions. Harry has suggested that he be released on conditions significantly less demanding than those in the release order. Harry Mem. at 1 n.1. The Court strongly disagrees that such conditions could reasonably assure Harry's future appearance at trial. In fact, this is a very close call on bail. However, setting bail on conditions similar to those in the initial Release Order, with certain modifications to account for changed circumstances, should insure against risk of flight.
>
> Harry will be released on the same $2.5 million bond, secured by $1.4 million in equity and two financially responsible co-signers. The Court will remand this matter to the Magistrate Judge to determine which potential properties and suretors are appropriate for this purpose, as well

---

[1] Judge Dickson has retired from the bench since the time of the September 21, 2020 Order.

> as the third party custodians. Release will also require travel restrictions, home incarceration, and surrender of his and his children's passports. He can access the internet, subject to monitoring by Pretrial Services.

(ECF No. 119 at 8-9). At the time of that April 22, 2020 Opinion, Defendant's yacht was located in Mexico, having been moved there or caused to be moved there by Defendant's associate Keith Loring.[2] Regarding the yacht, Judge Arleo wrote that Defendant would "not be released until the yacht [is] returned to the United States to the custody of the Government. In lieu of surrendering the yacht, Harry can post an additional $1,100,000 . . . in equity to fully secure the bond." (Id.). Judge Arleo also determined that the implications of the COVID-19 pandemic did not justify immediate release, in light of Defendant's circumstances at the time. (Id. at 9-11).

Defendant thereafter moved for reconsideration of Judge Arleo's April 22, 2020 Order, requesting, among other things, that the District Court remove the yacht's return as a precondition to Defendant's release. In the Order denying Defendant's reconsideration motion, Judge Arleo noted, in pertinent part: "To the extent that Harry seeks to modify the conditions of release related to the yacht, or to the extent he has a new bail package, he may properly present that package to the Magistrate Judge." (ECF No. 132 at 3).

Thereafter Defendant filed a motion to modify bail conditions on July 6, 2020. (ECF No. 134). In that application, Defendant proposed a new bail package, which included (1) release on $1 million bond, secured by a total of approximately $600,000 in equity in three properties, as well as a $100,000 bond signed by a third party; (2) Defendant to reside with Lena Jarborg in South Florida; (3) the appointment of two third-party custodians; (4) Defendant's surrender of his passport, as well as those of his children; and (5) Pretrial Services' monitoring of

---

[2] At the time of Harry's arrest in April 2019, the yacht was in Florida and, since September 2019, had been subject to a seizure order. (ECF No. 119 at 8-9).

Defendant's computer and internet usage. (See generally id.). The Government opposed that application, (ECF No. 135), and Defendant filed a reply. (ECF No. 136). Judge Dickson heard argument on Defendant's motion, via video conference, on August 10, 2020. At the conclusion of that proceeding, Judge Dickson directed the parties to submit supplemental briefing on specific issues, which the parties did. (ECF Nos. 139-141).

Both Judge Arleo and Judge Dickson had previously found that Defendant posed a substantial risk of flight if released. (ECF No. 85 at 5; ECF No. 119 at 6-8). However, Judge Dickson reviewed the expanded record on Defendant's July 6, 2020 application and, after considering the factors set forth in 18 U.S.C. § 3142(g), found that Defendant's substantial risk of flight might be sufficiently mitigated by the imposition of certain additional conditions on his release. Accordingly, on September 21, 2020, Judge Dickson entered an order permitting Defendant's release from custody pending trial, subject to conditions that Judge Dickson, in consultation with the United States Pretrial Services Office, deemed necessary to reasonably assure Defendant's appearance at trial.

These conditions included: (1) a $2,500,000 Secured Appearance Bond secured by $1,400,000 in available equity in the following properties, waiving the local rule: 136 Barefoot Cove, Hypoluxo, Florida, owned by Lena Jarborg ("Barefoot Cove"); 19354 Skyridge Circle, Boca Raton, Florida, owned by Shawn Maley ("Skyridge Circle"); and 241 Valley Road, Rochester, New York, owned by John and Tina Burns; and additional property to be determined and approved by Pretrial Services; and (2) a separate $100,000 Unsecured Appearance Bond to be co-signed by Steven Williams; and various other non-monetary conditions. (See ECF No. 144). Judge Dickson also ordered that Defendant would remain detained until verification had

4

been provided to Pretrial Services of the surrendering of all passports/travel documents, lien perfection against the proposed properties, and possession of the Defendant's yacht by the United States. (Id.). Finally, Judge Dickson ordered that "Once all conditions set forth herein for release are satisfied, a Hearing shall be scheduled before [the assigned United States Magistrate Judge] with all sureties prior to Defendant's release from the custody of the U.S. Marshals." (Id.).

On October 12, 2020, Defendant filed a letter request to add property owned by his associate Keith Loring, located at 960 South Shore Drive, Miami Beach, Florida ("the Loring Property"), to complete the required equity security ordered by Judge Dickson. (ECF Nos. 148, 150). Judge Dickson had earlier ordered that any "additional property [offered to secure Defendant's release was to] be determined and approved by Pretrial Services." (ECF No. 144 at 4). Pretrial Services evaluated the Loring Property and found it unsuitable to secure Defendant's bail. This conclusion was based on, among other reasons, Loring's undisputed role in removing or facilitating the removal of Defendant's yacht from Florida to Mexico, under circumstances Defendant has still not clearly explained, all during a period when Defendant was requesting bail but had not been forthcoming about this significant asset which Defendant's associate caused to be moved beyond the jurisdiction of the United States. Indeed, the District Court had evaluated the yacht as both a means of facilitating and supporting Defendant's flight and, moreover, found Defendant had been "less than candid" about the yacht. (See ECF No. 119 at 7-8; ECF No. 132 at 2).

5

The Government opposed Defendant's proposed addition of the Loring Property to secure his release and argued that Loring "lacks sufficient credibility to be a suretor…" because of Loring's conduct concerning the removal of Defendant's yacht from Florida to Mexico, which, combined with other reasons, deprived the Loring Property of sufficient moral suasion over Defendant such that the risk of its loss as a result of Defendant's flight could help ensure Defendant's appearance at trial. (Id.). The Government summarized: "simply put, there is insufficient evidence that defendant – a serial fraudster – cares enough about Mr. Loring's property that the prospect of its forfeiture would be such a "deeply felt hurt"… "that it would ensure defendant's appearance at trial." (Id.). Defendant countered that, when his bail package was viewed in "totality," the assessments of Pretrial Services and the Government that the Loring Property did not provide the necessary moral suasion over Defendant was erroneous, and the total bail package was more than sufficient to secure his release. (ECF No. 150).

On May 13, 2021, Defendant wrote to inform the Court that he had managed to arrange for the return of his yacht to the United States from Mexico and had surrendered it to the Government. (ECF No. 172). In the same letter, Defendant sought a decision on his pending motion for release. (Id.). The Government opposed Defendant's renewed request for release and asserted that a fresh assessment of the facts by the Court was required. (ECF No. 173). Defendant opposed that request and argued the Court had considered and decided all competing arguments concerning his release except for whether reliance on the Loring Property to secure his bond was appropriate, and only that question remained for determination. (ECF No. 174).

**II.     DISCUSSION**

The current application focuses on the property available to secure Defendant's appearance at trial, as part of his overall bail package. Specifically, Defendant relies on: (1) the return of his yacht to the United States and its delivery to the Government, and (2) his offer to add the equity in the Loring Property to the equity in the other properties previously included in his bail package to meet the threshold required by the Court's prior orders. Defendant argues that the surrender of his yacht, together with the additional security provided by the Loring Property, meet the preconditions of release set forth in the September 21, 2020 Order. The question before this Court, then, is a narrow one: does the bail package now offered by Defendant meet the security component of the previously set bail conditions such that this Court is satisfied that Defendant's appearance at trial is ensured? As discussed in more detail below, the answer is no.

After weighing the factors in 18 U.S.C. § 3142(g), this Court finds, based on the totality of facts, that the Loring Property—even when considered together with the additional elements of Defendant's proposed bail package—is insufficient to create a risk of loss that overcomes the substantial risk of flight Defendant poses. Nor does reliance on the Loring Property, as part of Defendant's broader bail package, provide sufficient moral suasion over Defendant to secure his appearance at future proceedings in this case. See United States v. Batista, 163 F. Supp. 2d 222, 226 (S.D.N.Y. 2001) (discussing legal standard and evaluation of suretors of varying levels of moral suasion over a defendant). Consequently, because the bail package presented by Defendant falls short of the requirements imposed by Judge Arleo, as modified by Judge Dickson, this Court must deny Defendant's application.

The purpose of "bail is not served unless losing the sum would be a deeply felt hurt to the defendant and his family; the hurt must be so severe that defendant will return for trial rather than flee." United States v. LeClercq, No. 07-80050-CR, 2007 WL 4365601 (S.D. Fla. Dec. 13, 2007) (quoting United States v. Szott, 768 F.2d 159, 160 (7th Cir. 1985)). On that principle, both Defendant and the Government agree. (See ECF Nos. 181 at 3 and 184 at 2). However, as the Government correctly argues, Loring and the Loring Property lack moral suasion over Defendant because of Loring's involvement with moving Defendant's yacht out of the United States to Mexico under highly suspicious circumstances, which reduces the potential impact of a loss of the Loring Property associated with Defendant's potential flight. (See EFC No. 180). That is, Loring's involvement with such conduct, without considering the other questionable characteristics about Loring the Government raises in its briefing, signals Loring's latent or active sympathy for Defendant's potential impulse to flee and undermines the Court's confidence that losing the Loring Property would result in "a deeply felt hurt" to Defendant "so severe that" it would serve as an incentive for Defendant to return for trial rather than flee. See LeClercq, 2007 WL 4365601, at *2. While the Loring Property may provide sufficient financial equity to meet the security threshold established in Judge Arleo's earlier order—assuming the rest of the package was adequate—that is not the lone concern this Court must consider. Indeed, it is not simply the value of property the Court must analyze; rather, the Court must determine if that property will truly accomplish the goal of ensuring Defendant's presence at trial. See United States v. Fedullo, 525 F. Supp. 1210, 1214 (D.N.J. 1981) ("[I]t is not the sum of the bail bond

that society asks for, but rather the presence of the defendant . . ..") (quoting United States v. Nebbia, 357 F.2d 303, 304 (2d Cir. 1996)). On this record, this Court concludes the Loring Property will not help accomplish that goal, even as part of a broader package.

Defendant's arguments to the contrary are unavailing. He concedes that relevant case law holds that the Court "must feel confident that the property owner's risk of loss is substantial enough to ensure Defendant's appearance." (ECF No. 181) (quoting Fedullo, 525 F. Supp. at 1214-15.). Indeed, even under the totality standard on which Defendant relies, (see ECF No. 181 at 4-5), the risk of loss and moral suasion of the proposed bail package is simply not sufficiently supported by the facts. Although the Court finds that the insufficiency of the Loring Property to secure Defendant's bail is an independent basis to deny Defendant's application—without more—the significant passage of time has substantially altered the facts supporting certain other property previously approved by the Judge Dickson as acceptable components of Defendant's bail package. Those changed circumstances further, and fatally, weaken the overall proposed bail package.[3]

Specifically, in the more than eight months since the Court's September 21, 2020 Order setting conditions of release, the owners of the Barefoot Cove and Skyridge Circle properties have fallen significantly further into arrears on mortgage payments. At the time of that order, the mortgages on both properties had been in forbearance status since April 2020 as part of a

---

[3] Judge Dickson clearly contemplated a final review of the overall bail package for changed circumstances as evidenced by his requirement that a hearing be held once all conditions set in the September 21, 2020 Order were met, and before Defendant could be released from custody. (See ECF No. 144 at 5, ¶ 15).

9

mortgage relief program under the CARES Act.[4] However, as of June 4, 2021, the past due amount on the Barefoot Cove mortgage had quadrupled from approximately $3,000 at the time of the September 21, 2020 Order, to more than $11,300.[5] (See ECF No. 180 at 4). Similarly, as of June 4, 2021, the past due amount on the Skyridge Circle mortgage had tripled from approximately $13,000 to more than $54,100. (Id.) Those arrearages threaten the equity on which Defendant relies to support his bail package and call into question the ownership interests at the heart of that package, as it relates to those two properties. Moreover, to the extent those properties were purchased or maintained, in part, with proceeds provided by Defendant before his arrest, as the Government asserts, (see ECF No. 180 at 4-6), the prospects for their return to solvency without such financial support appear dim, even with the anticipated end of the forbearance periods Defendant asserts. (See ECF No. 181 at 6). The result is a dispositive reduction in the Court's confidence in the ability of those properties to help secure Defendant's appearance at trial and, thus, on the Court's willingness to rely on them as part of Defendant's overall bail package.

### III. CONCLUSION AND ORDER

For the foregoing reasons, neither the Loring Property individually nor the broader bail package, considered as a whole, leave the Court confident they will accomplish the goal of securing Defendant's presence at trial. Defendant may present for new consideration an alternative bail package, which does not include the Loring Property. Should the new package

---

[4] Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136 (Mar. 27, 2020).

[5] This property has also been used to secure a line of credit of approximately $18,000. (See ECF No. 180 at 4).

include the Barefoot Cove and/or Skyridge Circle properties, Defendant must demonstrate that the mortgages on those properties are current and in good standing.

As it stands, however, the Court is not satisfied that the bail package currently presented by Defendant meets the conditions of release set forth in the District Court's April 22, 2020 Opinion and Order. Accordingly,

**IT IS** on this 21st day of July 2021,

**ORDERED** that Defendant's May 13, 2021 application for release, based on the bail package presented October 12, 2020, is denied.

 /s/ *André M Espinosa*  
ANDRÉ M. ESPINOSA  
United States Magistrate Judge