THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 2:19-cr-00246-MCA |
| CREAGHAN HARRY | |

**THE UNITED STATES OF AMERICA'S OPPOSITION TO DEFENDANT'S MOTION FOR AN ORDER GRANTING DEFENDANT A COPY OF THE GRAND JURY TRANSCRIPTS**

The United States of America files this Response to Defendant Creaghan Harry's Motion for an Order Granting Defendant a Copy of the Grand Jury Transcripts. *See* Dkt. 244. The Court should deny the motion because Defendant's claims are without support in fact or law.

Here, Defendant argues that the Government must have misled the Grand Jury in connection with one of the three charged counts of income tax evasion because the Government purportedly admitted that Defendant intended to file his taxes, but was unable to file because he was arrested shortly before the filing deadline for that single tax year. But Defendant's motion is premised on a misconception of an argument that Government counsel made in a bond hearing; when Government counsel argued that Defendant told his accountants not to file the tax returns because he would file his tax returns himself, it was not an admission that Defendant actually intended to file his taxes and therefore lacked the mental state required for the offense, as Defendant contends. To the contrary, as Government counsel explained, Defendant sought to dissuade the accountants from filing the taxes because he did not want them filed and was

1

having the taxes prepared for the purpose of deceiving financial institutions in connection with the financing of a purchase of a luxury yacht.  Defendant's other arguments – such as his assertion that he would have paid taxes if he hadn't been arrested and that his arrest prevented him from paying taxes – do not provide an affirmative defense to tax evasion under the law, are contrary to the facts, and do not suggest any attempts by the Government to mislead the grand jury, as is required to obtain access to Grand Jury materials under the law. Indeed, Defendant's speculation about what the Government presented before the Grand Jury is far from the "strong showing of particularized need" that is required to overcome Grand Jury secrecy.  *See* Fed. R. Crim. P. 6(e); *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 442–43 (1983).  Therefore, the motion should be denied.

## I.   BACKGROUND

Defendant is charged with one count of conspiring to defraud the United States and solicit illegal kickbacks, four counts of soliciting and receiving illegal kickbacks, one count of conspiracy to commit health care fraud and wire fraud, one count of conspiracy to commit money laundering, and four counts of income tax evasion.  *See* ECF No. 197.  As alleged in the Superseding Indictment, Defendant engaged in a health care fraud and wire fraud scheme where he falsely represented that he owned legitimate telemedicine companies that received revenue from patient payments for medical services, while concealing and disguising that the companies in fact received nearly all of their revenue from the solicitation and receipt of illegal kickbacks and bribes.  In furtherance of the

conspiracy, defendant solicited illegal kickbacks and bribes from durable medical equipment companies, pharmacies, and other medical providers, or marketers acting on their behalf, in exchange for arranging for medical professionals to order durable medical equipment and medications. These orders were obtained for Medicare beneficiaries regardless of medical necessity, in the absence of a pre-existing doctor-patient relationship, without a physical examination, and frequently based solely on a brief telephonic conversation. Additionally, Defendant and others engaged in a conspiracy to launder the proceeds of the scheme, including by using shell companies to conceal the nature, location, source, ownership, and control of the proceeds, and purchasing luxury goods, cars, and a yacht in monetary transactions in excess of $10,000. While living a lavish lifestyle with the proceeds of the fraud, the Superseding Indictment alleges that Defendant did not file or pay any income taxes on the proceeds of his fraudulent conduct.

## II.   LEGAL STANDARD

Federal Rule of Criminal Procedure 6(e) provides for secrecy of grand jury proceedings, only authorizing disclosure to specified individuals and in specified circumstances. *See* Fed. R. Crim. P. 6(e). Generally, grand jury proceedings are not authorized to be disclosed to defendants or their attorneys. *See id.* A court may authorize disclosure of a grand-jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). Rule 6 has "consistently [been] construed . . . to require a strong showing of particularized

need for grand jury materials before any disclosure will be permitted." *Sells Engineering, Inc.*, 463 U.S. at 442–43. To prove particularized need, the defendant must show that he needs the grand jury material to avoid a "possible injustice" and that "the need for disclosure is greater than the need for continued secrecy." *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 221–22 (1979). Mere speculation regarding improprieties in the grand jury does not warrant disclosure. *United States v. Budzanoski*, 462 F.2d 443, 454 (3d Cir. 1972). Nor does Rule 6(e) "permit a fishing expedition at the expense of grand jury secrecy." *United States v. Price*, 582 F. App'x 856, 850 (11th Cir. 2014).

"[T]he grand jury is an institution separate from the courts, over whose functioning the courts do not preside." *United States v. Williams*, 504 U.S. 36, 47 (1992). A facially valid indictment is generally enough both to call for a trial on the merits and satisfy Due Process. *See id.* at 54–55 (citing *Costello v. United States*, 350 U.S. 359, 364 (1956)). The grand jury is an independent body, and "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 300 (1991). That presumption of grand jury legitimacy "generally may be dispelled only upon particularized proof of irregularities in the grand jury process." *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring). While a court has some "supervisory power" to dismiss grand jury indictments for prosecutorial misconduct, that power is circumscribed to limited situations where there is a violation of "those 'few, clear rules which were carefully drafted and approved by [the Supreme] Court and by

Congress to ensure the integrity of the grand jury's functions.'" *Williams*, 504 U.S. at 46 (citation omitted). Such "limited situations" include violating grand jury secrecy requirements and other criminal statutes, such as those relating to false statements. *See, e.g.*, *United States v. Kennedy*, 564 F.2d 1329, 1338 (9th Cir.), *cert. denied*, 435 U.S. 944 (1977) ("[O]nly in a flagrant case, and perhaps only where knowing perjury, relating to a material matter, has been presented to a grand jury should the trial judge dismiss an otherwise valid indictment returned by an apparently unbiased grand jury."). Absent such violations, a court generally lacks authority to dismiss an indictment. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 260–63 (1988).

## III.  ARGUMENT

The Court should deny Defendant's motion because the Government did not concede during the bail hearing that Defendant intended to file his delinquent taxes, and the evidence that Defendant claims the Government withheld from the grand jury is not exculpatory.

### A. The Government did not Concede During the Bail Hearing that Defendant Intended to File his Delinquent Taxes

In asking the Court to take the extraordinary step of disclosing grand jury transcripts, Defendant asserts that "it is believed that the indictment is based, in part, on misinformation regarding the alleged tax crimes." ECF No. 244 at 3. Defendant bases this request on a statement by the Government's attorney at the August 11, 2021, bail hearing, in which Government counsel, in asking the Court to deny bail, summarized the evidence supporting the charges of tax

evasion as follows:

> [T]he defendants who made millions of dollars in proceeds from the scheme as a result of illegal kickbacks and bribes, then elected not to file or pay any income taxes on that income. And, in fact evidence gathered in the course of the Government's investigation indicated that the defendant went so far as to have accountants prepare income tax returns, which showed him owing a substantial amount of income taxes to the United States Government. But, that his purpose in having those income taxes prepared was in connection of seeking financing for a million-dollar yacht, which the Court is well-aware of. The accountants in their conversations, which were forwarded to the defendant, indicated that these tax returns should be filed. But, **the defendant told the tax return -- the tax preparers not to file the taxes -- not to e-file them, that he would handle them**. And, in fact the defendant then did not file the taxes, did not pay any money to the U.S. Government due in owing on the proceeds of his fraud scheme, and attempted to use the tax returns in an effort to obtain financing.

ECF No. 244-1 at 10–11 (emphasis added).

Defendant argues that the emphasized portion of the Government's colloquy means that, "[b]y the Government's own admission, Defendant both had his returns prepared[,] and he intended to file those returns himself."  ECF No. 244 at 4.  Defendant suggests that this statement amounts to a concession that the Government is unable to establish Defendant's willfulness, a required element of tax evasion, and therefore that the Government must have misled the Grand Jury.  *See* ECF No. 244 at 4; 26 U.S.C. § 7201.  But Defendant is incorrect.

Contrary to Defendant's argument in the motion, relating to the Court that Defendant *told* his accountants he would file his tax returns himself was not an admission that he actually intended to file his taxes—just the opposite.  As the Government argued, "his purpose in having those income taxes prepared was in connection of seeking financing for a million-dollar yacht," and not to file the

6

taxes (just as Defendant had not filed taxes in previous tax years).  ECF No. 244-1 at 10–11.  The Government argued that Defendant told the accountants not to file the taxes because he did not want the taxes filed, and that Defendant's statement that "he would handle them" was a deliberate lie and part of a pattern of conduct by Defendant meant to conceal his income from the federal government and evade assessment of taxes he owed on that income.  This conduct included using straw owners for his businesses to conceal the true ownership and flow of income to himself and using millions of dollars in company funds for personal expenses for himself and others. This information was revealed in witness interviews of Defendant's employees and co-conspirators, and corroborated in text messages and emails, as the government proffered in connection with bond proceedings in this matter.  *See* ECF No. 208 at 15.

Indeed, the Government submitted email communications in December 2018 between Defendant's assistant and an accounting firm.  *Id.* at Ex. F. When Defendant's accountants prepared his 2015-2017 tax returns for him in 2018, they worried about filing them without filing returns for years prior to 2015.  *Id.* Defendant's assistant will testify that defendant reviewed the tax returns, understood he owed substantial taxes on the income, and instructed her to tell the accountant not to e-File them with the Internal Revenue Service.  *Id.* at 15-16.  The evidence also will show that Defendant had not filed personal income taxes since 2013.  Defendant also created false 2016 and 2017 tax returns – showing different amounts owed to the IRS – in connection with an attempt to obtain financing for a yacht in September 2018.  *Id.* at Ex. G.  Despite these false

7

returns showing significant taxes due, over half a million dollars, neither return was ever filed with the Internal Revenue Service.  In addition to telling the accountants not to e-file the returns—the assistant also will testify that defendant directed her to pay nominee holders of his entities and to establish a shell company and shell bank account in the Dominican Republic to launder the proceeds of his crimes and to conceal the nature of the kickback payments to doctors.  *Id.* at 18.

The Government's bond submissions in this matter make clear that far from an "admission" that Defendant "intended to file those returns," as Defendant contends, the Government consistently contended that Defendant lied about wanting to file the returns in order to prevent his accountants from actually filing them, all for the purpose of using them to obtaining financing for a yacht.  The witness statements, text messages, and emails proffered by the Government and that will be introduced as evidence at trial lay out Defendant's pattern of conduct evidencing his tax evasion.

### B. The Evidence Defendant Claims the Government Withheld from the Grand Jury is not Exculpatory

Next, Defendant offers three arguments to correct what he believes was "misinformation" presented to the grand jury upon which the Superseding Indictment is based.  *See* ECF No. 244 at 3.  In essence, he argues the below information constitutes exculpatory evidence that should have been presented to the grand jury but, in his estimation, was not.  *See* ECF No. 244 at 6–9.  None of this information is exculpatory in light of the abundant evidence of Defendant's guilt.

Exculpatory evidence is any evidence tending to establish the innocence of a defendant. *United States v. Starusko*, 729 F.2d 256, 260 (3d Cir. 1984); Exculpatory Evidence, *Black's Law Dictionary* (10th ed. 2014). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10 (1976). "Evidence of slight, trivial or hypothetical favorability obviously does not sway us as much in our materiality analysis as does evidence of a clearly impeaching or exculpatory nature." *Rivera v. Commonwealth of Pennsylvania*, 187 F. App'x 240, 245 (3d Cir. 2006).

First, Defendant submits that, because he was arrested on April 9, 2019, and the deadline for filing taxes that year had not yet passed, he never had the chance to file his taxes. *See* ECF No. 244 at 6. Second, he claims inability to pay based on the fact that his bank accounts were frozen by the Government. *Id.* at 6–7. According to him, had he not been incarcerated and had his money frozen, he would have filed the tax returns. *Id.*

These arguments are unavailing. Initially, they do nothing to explain why Defendant did not file his tax returns in the prior charged tax years, as well as in previous years, as Defendant was a perennial non-filer. In addition, as discussed below, Defendant falsely represented to financial institutions that he already had filed his tax returns in 2017 and 2018, making his statement that he intended to file those returns in 2019 uncredible. Further, "the mere fact that [a defendant] was incarcerated when his return was due is not reasonable cause

9

for his failure to file timely." *Lindsay v. United States*, 4 F.4th 292, 295 (5th Cir. 2021).[1]  Similarly, financial inability to pay owed taxes is not a defense to criminal liability for willfully failing to pay income taxes.  *E.g.*, *United States v. Ausmus*, 774 F.2d 722, 725 (6th Cir. 1985); 26 C.F.R. § 301.6651-1(c)(1).

Aside from that, Defendant's tax history belies his all-too-convenient argument here.  The Government proffers that the evidence at trial will show that Defendant had not filed his taxes in years, told his assistant that he had no intention of filing tax returns that were prepared for him, and even advised others on how to evade paying income taxes.  In light of this evidence, Defendant will be unable to raise this argument as an affirmative defense because there is no "satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability."  26 C.F.R. § 301.6651-1(c)(1).

In his third argument, Defendant speculates that "the Government probably provided testimony to the grand jury . . .  that the purpose behind Defendant preparing his tax returns was to get bank financing for Defendant's

---

[1] The tax code provides that failure to timely file a return will result in a monetary penalty "unless it is shown that such failure is due to reasonable cause and not due to willful neglect[.]" I.R.C. § 6651(a)(1). Although the code does not define "reasonable cause," the Treasury Department's regulations provide,

> If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause. A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship . . . if he paid on the due date.

26 C.F.R. § 301.6651-1(c)(1).

yacht.  However, what the Government failed to tell the grand jury was that the bank requires a copy of the 'filed' tax returns."  ECF No. 244 at 7.  Defendant suggests that this fact would have convinced the grand jury that Defendant fully intended on filing his tax returns.  *See id.*  However, the Government will prove at trial that, after Defendant had his returns filed, told his accountants not to e-file them, and told his assistant he had no intention of actually filing the returns, he submitted falsified 2016 and 2017 IRS Tax Forms 1040 signed by him to a bank representative.  *See* Ex. A at 1–7.  Defendant submitted these falsified forms—made to look as if the returns had been filed with the IRS, when, in fact, they had not—in order to secure financing for a yacht.  *Id.*  Indeed, Defendant backdated these falsified tax returns, signing and dating them to make them appear that they had been filed in 2017 and 2018.  *Id.* at 5 & 7.  Thus, Defendant is incorrect when he asserts that he would have needed to actually file his tax returns in order to attempt to execute a scheme to defraud in connection with yacht financing.

In short, none of the "omissions" Defendant alleges are exculpatory in nature or would have affected the grand jury's decision to indict him.  As such, he has not demonstrated that disclosure of the grand jury transcript will avoid a "possible injustice" here.  *Douglas Oil*, 441 U.S. at 221–22.

### C. Defendant Has Made No Showing that the Need for Disclosure Outweighs the Competing Interest of Grand Jury Secrecy

Finally, even if the Court assumed Defendant's allegations concerning omissions to the grand jury were true, he still fails to demonstrate particularized

need here that outweighs the interest in grand jury secrecy.   To prove particularized need, the moving party must demonstrate "the need for disclosure is greater than the need for secrecy." *Douglas Oil Co.*, 441 U.S. at 222.  This is a "heavy burden" on the movant.  *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 05-2367 SRC, 2012 WL 4764589, at *5 (D.N.J. Oct. 5, 2012), *aff'd sub nom. In re Merck & Co., Inc. Sec.*, No. CV 05-1151 (SRC), 2012 WL 12904796 (D.N.J. Dec. 12, 2012).   "The rule of grand jury secrecy was imported into our federal common law and is an integral part of our criminal justice system."  *Id.* at 218 n.9.  Indeed, grand jury secrecy is "older than our Nation itself." *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959).  Absent a showing of "substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury," a court should not order pretrial disclosure of transcripts of grand jury proceedings. *Budzanoski*, 462 F.2d at 454.

As Defendant concedes, there is no general prosecutorial duty to disclose favorable evidence to the grand jury in seeking an indictment.   *Costino v. Anderson*, 786 F. App'x 344, 348 (3d Cir. 2019).  And grand jury proceedings "ought not be viewed as a fertile ground to be combed for evidentiary or other error." *United States v. Bari*, 750 F.2d 1169, 1176 (2d Cir. 1984).  Rather, the function of the grand jury investigation is solely to determine whether there is a probable cause a crime has occurred.  Where a defendant's explanation of need is wholly conclusory, as here, courts regularly hold that such speculations do not outweigh the need for grand jury secrecy.  *See, e.g.*, *United States v. Jackson*, 363 F. App'x 159, 162 (3d Cir. 2010); *United States v. Blackwell,* 954 F. Supp.

944, 966 (D.N.J. 1997); *United States v. Chu*, No. 19-cr-0678-WJM, 2021 WL 5997985, at *7 (D.N.J. Dec. 20, 2021); *United States v. Thompson*, No. 2:17-cr-00094, 2019 WL 102413, at *8 (D.N.J. Jan. 4, 2019); *United States v. Holzwanger*, No. 2:10-cr-00714-JAP, 2011 WL 1741920, at *10 (D.N.J. May 4, 2011).

Defendant has no good-faith basis for arguing that the full context of his crimes was not provided to the grand jury, nor do his speculative arguments suggest any attempts by the Government to mislead the grand jury.  Even viewing the information in a light favorable to Defendant—which the Court is under no obligation to do—in the face of voluminous inculpatory evidence, Defendant has not shown particularized need or any substantial likelihood of prejudicial irregularity in the conduct of the grand jury proceedings.  Instead, Defendant has engaged in precisely the type of "[c]onclusory or speculative allegations about what went wrong in a grand jury proceeding [that] give no cause to question the regularity of the grand jury's functioning." *Blackwell*, 954 F. Supp. at 966.  Such allegations do not outweigh the need for secrecy.  *Id.* Having not overcome his "heavy burden" to justify violating grand jury secrecy, *see In re Merck & Co.*, 2012 WL 4764589, at *5, the Court should deny Defendant's request.

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny the motion.

Respectfully submitted,

PHILIP R. SELLINGER

13

UNITED STATES ATTORNEY

/s/_____

Jacob Foster
Assistant Chief
Darren Halverson
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice

Dated: April 29, 2022