# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | **Criminal No. 19-cr-246-MCA-AME** |
| | : | |
| v. | : | <u>**ORDER**</u> |
| | : | |
| CREAGHAN HARRY, | : | |
| | : | |
| Defendant. | : | |

<u>**ESPINOSA, U.S.M.J.**</u>

 This matter is before the Court on the motion by Defendant Creaghan Harry ("Defendant") seeking modification of the conditions the District Court ordered him to satisfy to secure his release from pre-trial detention—which include, among other stringent requirements, a $2.5 million appearance bond secured by $1.4 million in appropriate equity—to a $500,000 unsecured appearance bond [ECF No. 278]; and the United States of America (the "Government") having opposed the motion [ECF No. 285]; and this Court having heard oral argument on March 8, 2023 [ECF No. 288]; and upon careful consideration of the parties' written submissions and arguments; and

 **WHEREAS** the parties are familiar with the charges alleged in the superseding indictment[1], the extensive procedural history of this matter, and the prior decisions of this Court and the Honorable Madeline C. Arleo, United States District Judge, on the question of Defendant's pre-trial detention.[2] [ECF Nos. 85, 97, 119, 120, 132, 144, 189, 221]; and

---

[1] The superseding indictment charges Defendant as the mastermind of an elaborate, international Medicare fraud, kickback, and money laundering scheme involving losses of $247 million, along with tax evasion counts. [ECF No. 197]. Defendant has entered a plea of not guilty and denies the charges.

[2] In an April 22, 2020 Opinion and Order, Judge Arleo found that Defendant's "history of involvement in allegedly

**WHEREAS**, in a November 3, 2021 Order, Judge Arleo affirmed this Court's July 21, 2021 decision concerning the impropriety of Defendant's reliance on certain real property offered to secure his release but remanded for a hearing to determine whether Defendant could demonstrate that other properties (the "Maley and Jarborg Properties") "satisfy *United States v. Nebbia*, 357 F.2d 303 (2d Cir. 1966)."[3] [ECF Nos. 189, 221]; and

**WHEREAS** Defendant thereafter appealed Judge Arleo's November 3, 2021 Order to the United States Court of Appeals for the Third Circuit, which, on February 3, 2022, denied his application for lack of jurisdiction to consider a non-final order under 18 U.S.C. § 3145(c). [ECF Nos. 222, 236]; and

**WHEREAS** Defendant subsequently brought this motion and, at oral argument, abandoned any reliance on the Maley and Jarborg Properties, obviating the need for a *Nebbia* hearing. [ECF No. 288]. Instead, Defendant asserts several arguments unrelated to the *Nebbia* analysis the District Court ordered be conducted on remand.[4] Defendant's motion seeks a

---

fraudulent schemes with international components, history of maintaining bank accounts in the Dominican Republic, Panama, Cyprus, Columbia, Sweden and Switzerland, misrepresentations to Pretrial Services concerning the extent of his foreign travel, his alleged attempts to aid another in avoiding the jurisdiction of the United States and his own statements regarding flight further suggest that [he] presents a risk of flight." [ECF Nos. 119 at 8-9, 120]. Observing that the question of whether *any* bail conditions would suffice was a "very close call," after "a careful balancing of the factors in 18 U.S.C. § 3142(g)," Judge Arleo held that the serious flight risk Defendant posed could be mitigated "through a stringent set of conditions" including a "$2.5 million bond, secured by $1.4 million in equity and two financially responsible co-signers," among other requirements. [*Id.*]. After additional proceedings before this Court, Defendant again appealed and the District Court filed an order affirming, in part, and remanding for further proceedings. [ECF Nos. 120; 132; 189; 221].

[3] The purpose of a *Nebbia* hearing is to determine "the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond." *See* 18 U.S.C. § 3142(g)(4); *United States v. Fedullo*, 525 F. Supp. 1210, 1214 (D.N.J. 1981) ("[I]t is not the sum of the bail bond that society asks for, but rather the presence of the defendant.") (quoting *Nebbia*, 357 F.2d at 304). A court must "decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(g)(4).

[4] Specifically, Defendant argues: (1) his post-conviction Sentencing Guidelines range will be far lower than the life range the Government calculates; (2) he has been treated differently than similarly situated defendants; (3) the Government has discriminated against him in moving for detention; (4) he should be released to aid in his own defense; and (5) if any one of those reasons is insufficient, the Court should find that, in the aggregate, they warrant reduced release conditions. [ECF No. 278 at 1-38].

wholesale reconsideration of Judge Arleo's bail determination and proposes a massive reduction

of the release conditions the District Court imposed, from terms requiring a $2.5 million

appearance bond secured by $1.4 million in appropriate equity, and other stringent requirements,

to a mere $500,000 unsecured appearance bond. [ECF No. 278]; and

**WHEREAS**, in opposition, the Government contends that, with the *Nebbia* matter

resolved, the question of Defendant's release conditions is closed. Specifically, the Government

argues the Court should refuse to reopen the bail hearing because Defendant's motion asserts

only claims that were previously raised and denied or that are based on information known to

Defendant at earlier bail hearings, none of which bear materially on the issue of the release

conditions that will reasonably assure his appearance at future proceedings and the safety of the

community. [ECF No. 285 at 14 (citing 18 U.S.C. § 3142(f)(2)(B))]; and

**WHEREAS** Title 18, United States Code, Section 3142(f)(2)(B), authorizes a court to

reopen a bail hearing "at any time before trial if the judicial officer finds that information exists

that was not known to the movant at the time of the [original] hearing *and* that has a material

bearing on the issue [of] whether there are conditions of release that will reasonably assure the

appearance of such person as required and the safety of any other person and the community."

(emphasis supplied); *see also United States v. McIntyre*, No. 16-cr-13, 2018 WL 385034, at *1

(D.N.J. Jan. 10, 2018). Whether to reopen a bail hearing is determined at the court's discretion.

*United States v. Schwamborn*, 249 F. App'x 906, 907 (2d Cir. 2007); *United States v. Mathes*,

593 F. App'x 391, 392 (5th Cir. 2015); and

**WHEREAS**, on March 8, 2023, this Court heard argument on the question of whether

Defendant had presented any new information material to the analysis required under 18 U.S.C.

3

§ 3142(g) and sufficient to reopen the question of bail pursuant to Section 3142(f)(2)(B). During that hearing, Defendant conceded, candidly, that "most" of his arguments "could have been raised" earlier but were not, that the facts at their core existed at earlier points in the case, and that he primarily relies on the passage of time since his original detention as the basis to reopen the question of appropriate bail conditions.[5] [ECF No. 288]; and

**WHEREAS** for the reasons stated on the record on March 8, 2023, the Court finds that Defendant presents no new information material to the Section 3142(g) analysis sufficient to justify reopening the question of bail pursuant to Section 3142(f)(2)(B). Beyond the passage of time since his initial detention, none of Defendant's arguments concern a matter he could not have raised earlier, nor are any material to the Section 3124(g) analysis. Accordingly, in its discretion, the Court declines Defendant's invitation to reopen the bail hearing to consider arguments supporting his proposed extraordinary revision to the conditions the District Court found were necessary to secure his release after its "careful balancing" of Section 3142(g) factors—conditions that Court has affirmed in multiple orders. [ECF Nos. 119, 120, 221]; and

**WHEREAS**, despite Defendant's failure to proffer a basis to reopen the question of bail, this Court nevertheless entertained argument on his specific additional claims during the March 8, 2023 hearing and concluded, for the reasons stated on the record, that even if there was a basis to consider those arguments, none would alter the outcome of the Court's weighing of the Section 3142(g) factors. [ECF No. 288]. A summary of those conclusions concerning each of Defendant's specific arguments follows, and supplements the in-the-alternative determinations the Court set forth during the March 8, 2023 hearing; and

---

[5] Defense counsel also asserted that his now departed co-counsel, who led several earlier bail arguments, could have but failed to raise certain claims in those prior bail proceedings. [ECF No. 288].

**WHEREAS** first, the Court finds Defendant offers no persuasive basis to conclude the Government's proffer concerning the potential sentence he faces if convicted overstates his risk of flight. The Sentencing Guidelines calculation in the Government's written opposition appears correct [ECF No. 285 at 23-25], assuming the Government proves facts necessary to satisfy the components of that calculation. Defendant conceded as much at oral argument but challenged the factual basis for the Government's calculation. Such a challenge, however, assails the merits of the Government's evidence against Defendant and disputes the Government's ability to prove its case, which is a question for resolution at trial and not for inquiry in a bail proceeding. Nothing in Section 3142(f), (g)(2), or any authority Defendant cites, requires the Court to undertake a mini trial, in the context of a bail hearing, on the losses the Government charges.[6] While presumed innocent, if convicted on all or the major counts, Defendant faces a potentially extensive term of imprisonment;[7] and

**WHEREAS** second, the Court finds Defendant offers no persuasive basis to conclude he has been treated more harshly than similarly situated defendants in this district in the setting of his release conditions. Rather, the record establishes that the Court has considered carefully, over the course of multiple hearings, Defendant's particular arguments about the specific facts and

---

[6] The Rules of Evidence do not apply at a bail hearing, and the Court may accept proffers concerning facts and evidence. 18 U.S.C. § 3142(f)(2)(B). In the superseding indictment, the Government alleges actual loss of $247 million, for Counts One and Six, and the grand jury found probable cause to return a true bill. [ECF No. 197]. Consequently, the Government's reliance on that loss amount in calculating a potential sentencing range is not unreasonable. Moreover, even prior to the superseding indictment, on the charges in the original indictment, the District Court found Defendant faced a "de facto life sentence." [ECF No. 119 at 6 ("At 51 years old, even a 20 year sentence (substantially less than the government estimates) would be a de facto life sentence, which supports a finding of a risk of flight.") (citation omitted)].

[7] The superseding indictment alleges offenses resulting in a potential combined statutory exposure of approximately 90 years in custody. [ECF No. 285 at 23-29; citing 18 U.S.C. § 3584 (authorizing consecutive custodial terms); U.S.S.G. § 5G1.2(d) (permitting consecutive sentences on one or more counts, but only to the extent necessary to achieve the total punishment)].

circumstances relevant to his detention or release, and the Government's arguments on that question, to make an individualized assessment in setting the conditions of his release. [ECF Nos. 85 at 4-12, 97 at 1-5, 119 at 5-9, 132 at 2-3, 189 at 2-11]. Indeed, bail, "although generally applicable, is an individualized determination." *Sistrunk v. Lyons*, 646 F.2d 64, 72 (3d Cir. 1981) ("Even on a conspiracy charge, defendants do not lose their separateness or identity."). The cases Defendant cites in his brief [ECF 278-1 at 12-16] (on which he previously relied, ECF No. 99 at 8-12), are factually inapposite because they do not involve an international conspiracy with hundreds of millions of dollars in loss. Certain of the cases are also distinguishable because the Government did not seek detention. However, Defendant relies on at least one example, *United States v. Williamsky*, No. 19-247 (KCM) (D.N.J April 5, 2019), in which the defendant faced similar charges to those in this case and was unable to meet a $3 million bail, which supports rather than calls into question the release conditions ordered here; and

 **WHEREAS** third, the Court finds Defendant offers no persuasive basis to conclude the Government has discriminated against him in moving for detention, to punish his decision to exercise his rights to remain silent and for a trial or otherwise. Defendant argues the bail conditions ordered for his co-defendants, Lester Stockett and Elliot Loewenstern, demonstrate the discrimination about which he complains.[8] But Stockett and Loewenstern are not identically situated to Defendant, and, while they are all charged as co-conspirators, as set forth above, bail, "is an individualized determination." *Sistrunk*, 646 F.2d at 72 ("The question when application

---

[8] Stockett initially consented to detention, was later ordered detained, and after pleading guilty to Counts 1 and 6 of the indictment, was released to a third-party custodian on a $2 million appearance bond secured by real property in Florida, with conditions including a requirement that his wife and her daughter relocate to New Jersey from Colombia and surrender their travel documents. [ECF Nos. 19, 53, 59, 70, 107-10]. After a bail hearing in Florida, Loewenstern was ordered released on a $1.5 million bond secured by two properties including his home, which conditions were later sharpened to require a lis pendis on at least one of those properties and adding his wife as a third-party custodian and co-signer of the bond. [ECF Nos. 8, 37-39].

for bail is made relates to each one's trustworthiness to appear for trial and what security will supply reasonable assurance of his appearance."). Neither Stockett or Loewenstern had similar foreign accounts and ties, made statements about flight to witnesses, lacked candor in statements to Pre-Trial Services, or caused to be moved a sea vessel from the United States to a foreign jurisdiction at the time of his arrest—to itemize several distinctions in the individualized assessments of the Section 3142(g) factors undertaken with respect to each. Nor do Stockett or Loewenstern face similar terms of imprisonment, having accepted responsibility for their conduct and entered into plea and cooperation agreements with the Government, significantly reducing any motive to flee. The Government sought Defendant's detention from the outset, upon his arrest in Florida, based on its particularized assessment of facts it has consistently proffered motivate its view that he poses a severe flight risk. There is no evidence of impermissible discrimination; and

**WHEREAS** fourth, the Court finds Defendant has not demonstrated a compelling need for release to aid in his own defense.[9] To be sure, the question of Defendant's access to the discovery in this matter has been extensively litigated before the District Court, which, as discussed during the March 8, 2023 hearing, has ordered that Defendant have expanded, remote access to that extensive discovery, during his detention, as it is processed by a third-party discovery review contractor, paid with public funds.[10] [ECF Nos. 233; 288]. Additionally, the

---

[9] Pursuant to 18 U.S.C. § 3142(i), the Court may order a detained person released "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Yet, such relief "is to be used sparingly," *United States v. Alderete*, 336 F.R.D. 240, 266 (D.N.M. 2020), and a defendant bears the burden of demonstrating a compelling reason for such release. *United States v. Patel*, No. CR 20-MJ-14001 (ZNQ), 2020 WL 1698785, at *3 (D.N.J. Apr. 8, 2020) (citing *United States v. Dupree*, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011)).

[10] During an October 2021 hearing, the District Court made clear its commitment to "do everything in [the Court's] power to facilitate [defense counsel's] ability to prepare for trial and meet with [his] client to go over documents." [ECF No. 233, 19:2-2]. In the same proceeding, defense counsel estimated that approximately "80 percent of [the

Government has already exceeded its discovery obligations by preparing and delivering to Defendant discrete sets of documents it had previously disclosed in other forms but reproduced in a manner designed to facilitate easier review, and by offering to take additional steps for the same purpose, some of which Defendant has declined.[11] [ECF No. 287 at 11-12]. On this record, Defendant's detention is not an insurmountable barrier to his adequate preparation for trial; and

**WHEREAS**, because Defendant's individual claims each lack merit, the Court discerns no "cumulative error," as Defendant asserts.

**THEREFORE**, for the foregoing reasons and for the reasons the Court stated on the record during the March 8, 2023 bail hearing,

**IT IS** on this 28th day of March 2023,

**ORDERED** that Defendant's motion to reopen the bail hearing and modify the conditions he must satisfy to secure release from pretrial detention is **DENIED**.

ANDRÉ M. ESPINOSA
United States Magistrate Judge

---

extensive discovery] is irrelevant," but claimed to be unable to untangle the relevant from irrelevant material, in response to which the Court emphasized counsel's obligation to work through that discovery, and urged the Government to facilitate that review—which the Government asserted it had done in the form or providing detailed logs and descriptions of the contents of material it has produced. [*Id.* 22:18-24:25]. The Court denied Defendant's request to require the Government to produce a curated set of materials on which the Government will rely at trial but reiterated the determination to "make it my personal obligation to make sure you have enough time to meet with your client about" the discovery in the case, so that Defendant "can be fully prepared to defend himself … at trial." [*Id.* 26:1-30:7]. Finally, the Court invited Defendant to apply for a publicly funded, third-party discovery vendor [*Id.* 40:1-30:7], which the parties confirmed at the March 8, 2023 hearing is now in place.

[11] At the March 8, 2023 hearing, Defendant declined the Government's invitation to identify any additional, discrete subsets of material it could reproduce for him, preferring to avoid divulging defense strategies. [ECF No. 288].